

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00176-CR

ANTONIO DERRANCE FLETCHER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 27,610

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Antonio Derrance Fletcher preceded his friend and regular companion, Devin Royal, into Deidra Neal's apartment and greeted Neal, Derris Carr, and Javon Newman. Fletcher walked past Newman and stood between Newman and Carr. Then Royal entered the apartment and shot Newman, who died as a result. After the shooting, Fletcher told Royal to give him the gun and to leave with him, and the two ran out. Fletcher appeals his resulting murder conviction[1] by arguing that the evidence is insufficient to show he was a responsible party in the shooting. We affirm, because sufficient evidence supports the jury finding that Fletcher was party to the murder.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

A defendant can be convicted as a party to an offense if, while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts

---

[1]The trial court assessed Fletcher's punishment at forty-five years' imprisonment.

to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). To determine whether an individual is a party to an offense, the reviewing court may look to events before, during, and after the commission of the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). A court may also rely on circumstantial evidence to prove party status. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996). There must be, however, sufficient evidence of an understanding and common design to commit the offense. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties. *Id.* The mere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985).

Fletcher argues that the evidence shows only that he was present at the scene and fled after the shooting. He claims this is insufficient to support a conviction as a party. *See id.* If that were all the evidence in this record, Fletcher would be correct. The question is whether this, in combination with other evidence, sufficiently shows that Fletcher was involved as a party rather than merely an unfortunate bystander.

The record before us contains a fair amount of evidence relevant to Fletcher's involvement in the crime. Two days before the shooting, Fletcher was with his friend Royal when Royal and Newman were in a fistfight that resulted in Royal losing some teeth. Two days later, late at night, Royal, Royal's brother, and Fletcher, came to the apartment where Newman was partying with acquaintances. Fletcher knocked on the door, was allowed in, and greeted the

3

three occupants remaining. A few seconds later, Royal came in and shot Newman. Fletcher stood in the middle of the room and watched while Carr hid behind a couch and Neal kept herself out of sight.

Carr testified that Fletcher knocked on the door and was allowed entrance by Newman. Fletcher walked past Newman and bumped fists with Carr—about then, Royal came in the door that Newman had left open. Fletcher was at that point between Carr and Royal. Without a word, Royal shot Newman; and, while Fletcher stood watching the two struggle over the gun, multiple shots were fired. Reportedly, both Fletcher and Royal said, after the final shot to Newman's head, "He out of here," which Carr interpreted to mean they both believed Newman to be dead. Fletcher told Royal to give him the gun—which Royal promptly did. Fletcher tucked the gun against his side and said, "Let's go"—which they both promptly did. Carr went to Newman, thinking to render aid, and found that none was possible. Carr then ran out of the building.

At trial, although Neal had excellent recall about the complex web of relationships amongst her children, her guests' children, the father of each child, and all of their relationships to each other, she professed a very difficult time recalling the events of that night. She was thus prompted by the statements she provided at or near the time—which she acknowledged as being hers since her initials were on each page or sentence—although she testified she remembered none of it. It appears that she also simply stood in shock and stared while her visitor was murdered. She acknowledged that her statements and the 9-1-1 call she made identified Royal as the shooter, but testified that she could not even remember at trial who shot the victim. Other evidence shows that Royal and Fletcher were close friends, and Neal testified that, whenever one

4

was at her apartment, the other was as well. There is also evidence that the two were seen together in the minutes before the murder and that they came to the apartment together.

After the shooting, Fletcher told Royal to give him the gun, which Royal did. Fletcher told Royal to leave with him, and Royal did. As they left, Fletcher was working to tuck the gun out of sight.

Curious was the perspective provided by Latasha Reed, a former girlfriend with a child by Fletcher. Reed testified that, at approximately one o'clock in the morning, just before the shooting, Reed saw Fletcher and Royal in the parking lot from the apartment balcony, then scooped up Neal's eleven-month-old daughter and left. Fletcher and Royal entered about three minutes later. Reed testified that she saw Fletcher about twenty feet from the stairs, but refused to admit that she either spoke to Fletcher or attempted to get his attention. Reed thereafter texted Fletcher repeatedly, first texting "he dead," and then which witnesses were talking to police about him and which ones were too intoxicated to give a statement. Phone records show she spoke with Fletcher for five minutes, although she does not now remember doing so. The evidence also shows that Fletcher and Reed were texting updates about witnesses and their statements to police that night and that there were forty-four attempted and completed calls between them the next day.

Another witness, Ashley Strang, saw Fletcher and Royal together about a half hour after the shooting, in a different apartment complex parking lot. They were jumping up and down and acting "crunk," excited and happy. She heard one of the two say, at that time and place, "we

5

domed him."[2]  She was not sure which one made the statement, but that language implicates both individuals, rather than just one of them—and there is evidence that only Fletcher and Royal were there.

Fletcher and Royal sought refuge from Sheena Perkins, a sometimes friend of Fletcher who is currently planning to marry him.  Perkins testified that Fletcher called her repeatedly begging for help and that Fletcher and Royal appeared at her apartment.  She said they were there for less than ten minutes—and she had gotten word off the grapevine that Royal had shot somebody.  She told Royal he had to leave, and Fletcher went with him.  Although one walked away and the other was driven away by an unknown person, the two were found two days later in a Dallas apartment rented by a relative of Latasha Reed.

Although Fletcher did not testify, he made several statements after his arrest in Dallas that were introduced into evidence:  that he knew nothing about a killing, that he was not even at Neal's apartment the night of the shooting, and that he was on the run from a nonspecified felony.

We conclude that the evidence set out above is sufficient to allow a jury to find that Fletcher was involved in the murder as a party.  This record contains a wide array of evidentiary facts supporting the conviction:  the earlier fight, the friendship between Fletcher and Royal, the way Royal and Fletcher entered Reed's apartment, their respective actions before, during, and after the shooting, Fletcher's apparent lack of surprise or any reaction to the shooting occurring

---

[2]"Dome" is a slang expression generally understood to refer to the head.  The jury could have understood the comment made between Fletcher and Royal to indicate the pair's celebration of the head shot that apparently killed Newman.

only a very few feet away from him, Fletcher's decision to stand between Carr and the gunplay, the mother of one of Fletcher's children being there, seeing Fletcher and Royal coming and promptly taking an eleven-month-old infant out and away from the carnage that followed, passing Fletcher along the way, Fletcher's direction to Royal to give him the gun, Fletcher's direction of their escape, Fletcher's excitement with Royal afterward, the comment between the two friends about what could be understood as a shot in the head, and Fletcher's implausible, guilt-suggesting denials later when caught in Dallas.[3]

This is far more than a bystander situation. Reasonable inferences can be easily drawn from the evidence as set out above to support a jury finding that Fletcher acted with intent to promote or assist the commission of the offense by encouraging, directing, aiding, or attempting to aid the other person to commit the offense. The evidence is sufficient.

We affirm the judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     November 25, 2013
Date Decided:       December 5, 2013

Do Not Publish

---

[3]"Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *Guevara*, 152 S.W.3d at 50.